# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Student Doe #14, et al., | No. CV-25-01844-PHX-SHD |
| Plaintiffs, | **ORDER** |
| v. | |
| Donald J Trump, et al., | |
| Defendants. | |

Pending before the Court are Plaintiffs' Emergency Ex Parte Motion for a Temporary Restraining Order ("TRO") and Motion to Proceed with Pseudonym and for Protective Order/Order not to Detain. (Docs. 2, 3.) Plaintiffs claim that Defendants have violated the Administrative Procedure Act, as well as other rights they possess, by unlawfully terminating their records in the Student and Exchange Visitor Information System to deprive them of their ability to remain in the country. Because Plaintiffs have, at this early stage of the case, raised serious questions as to whether Defendants are following the Government's established rules and regulations regarding Plaintiffs' nonimmigrant status in the United States, and have demonstrated that Defendants' conduct would irreparably harm Plaintiffs, the Court will grant Plaintiffs temporary relief in the form of a 14-day TRO to maintain the status quo while it awaits further briefing from the parties. The Court will hold a preliminary injunction hearing on June 11, 2025 to hear both parties' positions and determine whether further preliminary relief is warranted.

///

## I. BACKGROUND

Plaintiff Arizona Student Doe #14 ("Doe 14") is an international student pursing a doctoral degree at an Arizona college or university as authorized by his F-1 student status. (Doc. 1 ¶ 1.)[1] He also has a pending Form I-485 (Application to Register Permanent Residence or Adjust Status), which he filed after his form I-140 (Immigrant Petition for Alien Worker)—for immigrants seeking to qualify as members of professions holding an advanced degree—was approved. (*Id.* ¶¶ 1, 62.) Plaintiff Arizona Student Doe #15 ("Doe 15") is Doe 14's wife, who is in the United States under F-2 status with a pending Form I-485 as well. (*Id.* ¶ 2, Doc. 2-2- ¶ 3.) Her immigration status is dependent upon that of her husband. (Doc. 1 ¶ 2.)

Doe 14 was issued his F-1 visa in June 2022. (*Id.* ¶ 58.) In July 2023, he was notified by the U.S. Consulate that his visa was revoked, with no reason provided. (*Id.* ¶¶ 65–66.) In February 2024, his visa was restored to "issued" status, again with no reason provided. (*Id.* ¶ 69.) Doe 15 received her F-2 visa in April 2024. (*Id.* ¶ 70.) Doe 14's F-1 visa expired in June 2024. (*Id.* ¶ 6.) Plaintiffs filed their Forms I-485 in August 2024, which remain pending. (*Id.* ¶¶ 72, 75.)

On March 16, 2025, Plaintiffs were stopped at a U.S. Customs and Border Patrol Checkpoint near Yuma, Arizona, and told by officers that Doe 14's F-1 visa was revoked and that—because of Doe 14's visa revocation—Doe 15's F-2 visa was or would be revoked. (*Id.* ¶ 6.) Plaintiffs were subsequently separated and detained. (*Id.* ¶ 80.) On March 18, 2025, while detained, Doe 14 received a letter from the U.S. Department of Homeland Security ("DHS") informing him that his Student and Exchange Visitor Information Systems ("SEVIS") status was terminated for "otherwise failing to maintain status." (*Id.* ¶ 81.) The letter also cited Doe 14's July 2023 visa revocation but did not mention the subsequent February 2024 restoration. (*Id.* ¶ 82.) On March 20, 2025, the U.S. Embassy emailed Doe 15 that her visa was revoked because "subsequent to visa issuance, information came to light indicating that [she] may be inadmissible to the United

---

[1] The facts set forth in Plaintiffs' Complaint are supported by executed declarations attached as exhibits to Plaintiffs' Motion for TRO. (*See* Docs. 2-2, 2-3.)

States and ineligible to receive a visa." (*Id*. ¶ 83.) Her SEVIS record was also terminated. (*Id*. ¶ 5.) Plaintiffs were released from custody on March 21, 2025. (*Id*. ¶ 85.) Plaintiffs' SEVIS status remains as "terminated." (*Id*. ¶¶ 97–98.)

## II.  MOTION FOR TEMPORARY RESTRAINING ORDER

Although "very few circumstances justif[y] the issuance of an ex parte TRO," *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006), based on the Court's review of Plaintiffs' motion, the allegations in the complaint and the attached declarations, and relevant authorities, the Court finds that Plaintiffs have met the requirement for an emergency ex parte TRO at this time, *see* Fed. R. Civ. P. 56(b) (the Court may only issue a TRO without notice to the adverse party if (1) "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required"). Here, Plaintiffs' attorney certified in writing that he attempted to notify the Office of the U.S. Attorney for the District of Arizona of Plaintiffs' motion via email and included a copy of the motion. (Doc. 2-3 ¶ 6.) Further, as discussed below, the Court finds that the facts alleged by Plaintiffs clearly show that immediate and irreparable injury, loss, or damage will result to Plaintiffs before Defendants[2] can be heard in opposition.

Plaintiffs seeking a TRO must establish that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see also All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (holding that, in the Ninth Circuit, "'serious questions going to the merits' and a hardship balance that tips sharply

---

[2] Defendants are Donald J. Trump, in his official capacity as President of the United States, John Cantu, in his official capacity as the Field Officer Director of Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations, Phoenix Field Office, Todd M. Lyons, in his official capacity as the Acting Director of ICE, DHS, and Kristi Noem, in her official capacity as the Secretary of DHS.

toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met"). The balance of equities and public interest factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The Court is satisfied that, at this stage, Plaintiffs have shown a likelihood of success and at the very least have shown serious questions going to the merits of their claims under the Administrative Procedure Act ("APA").[3]

Plaintiffs allege that DHS violated the APA in two ways: (1) by failing to follow their own rules and regulations governing the proper termination of Plaintiffs' SEVIS records, and (2) by acting arbitrarily and capriciously in failing to provide a satisfactory explanation for their actions in terminating the SEVIS records. (Doc. 2 at 34, 37–38.) An agency violates the APA when it does not follow its own regulations and procedures. *See Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003).

Here, Plaintiffs allege that the provided reason for the termination of Doe 14's SEVIS record was for "failing to maintain status" based on the unexplained—and eventually reversed—revocation of his visa, and the subsequent detention and removal proceedings stemming from the visa revocation. (Doc. 1 ¶¶ 81–82.) The reason for Doe 15's visa revocation, and presumably from the current record, her subsequent SEVIS record termination, was that "subsequent to visa issuance, information came to light indicating that [she] may be inadmissible to the United States and ineligible to receive a visa." (*See id.* ¶ 83.) Methods of failing to maintain status include by failing to make normal progress toward completing a course of study, 8 C.F.R. § 214.2(f), engaging in unauthorized employment, willfully failing to provide full and truthful information to DHS, or being convicted "in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)," 8 C.F.R. § 214.1(e)–(g). Plaintiffs allege they have not committed any act which would lead to them failing to maintain status under the

---

[3] Because Plaintiffs have established a likelihood of success on the merits of their APA claims in Counts I and V, the Court does not address Plaintiffs' likelihood of success on Counts II, III, or IV.

applicable regulations. (Doc. 2 at 35–36.)

Further, the revocation of an F-1 visa does not constitute a failure to maintain status under the regulations or the U.S. Immigration and Customs Enforcement's ("ICE") policies. *See* 8 C.F.R. § 214.1; *Vyas v. Noem*, 2025 WL 1351537, at *2 (S.D. W. Va. 2025) (citing ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010), https://perma.cc/ZM2S-R6Z6). And based on the current record, none of the grounds on which Defendants relied to terminate Plaintiffs' SEVIS records comport with 8 C.F.R. § 214.1(d).[4] *See, e.g.*, *Roe v. Noem*, 2025 WL 1114694, at *3 (D. Mont. 2025) (granting TRO on APA claim on similar facts where student alleged DHS unlawfully terminated F1-status in SEVIS system and DHS's cited reasons did not comport with statutory or regulatory requirements); *Isserdasani v. Noem*, 2025 WL 1118626 (W.D. Wis. 2025) (same). Accordingly, the reasons given by Defendants for the termination of Plaintiffs' SEVIS records, as alleged by Plaintiffs, are contrary to their "own regulations and procedures." *See Nat'l Ass'n of Home Builders*, 340 F.3d at 852.

As for Plaintiffs' second argument, under the APA, reviewing courts shall set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency action is arbitrary and capricious if the agency fails to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Hernandez v. Garland*, 52 F.4th 757, 768 (9th Cir. 2022). Because Defendants' reasons are contrary to their own regulations and procedures, Plaintiffs have raised serious questions going to the merits of whether Defendants articulated a satisfactory explanation for their actions.

The Court also concludes that Plaintiffs have shown a likelihood of irreparable harm absent this relief. Plaintiffs allege that they may not be covered by the current nationwide

---

[4] Under this regulation, an F-1 nonimmigrant's status may only be terminated "by the revocation of a waiver authorized on" the nonimmigrant's "behalf under section 212(d)(3) or (4) of the [Immigration and Nationality Act]; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d).

preliminary injunction issued by the U.S. District Court for the Northern District of California, because it only covers similarly situated individuals to the plaintiffs in that case. (Doc. 2 at 30–31); *see Doe v. Trump*, — F. Supp. 3d —, 2025 WL 1467543, at *12 (N.D. Cal. 2025). Here, Plaintiffs aver they may not be similarly situated because, unlike those plaintiffs, (1) Does 14 and 15 have not had any law enforcement contact and their records were terminated before April 2, 2025, when Homeland Security Investigations instructed officials to "terminate all in SEVIS"; and (2) Defendants have not reinstated Plaintiffs' SEVIS records despite multiple requests. (Doc. 2 at 33.) Plaintiffs additionally allege that irreparable harm has already occurred, and further harm is imminent, as Doe 14 was terminated from his position as a graduate research assistant and it is unclear whether he will be reinstated. (Doc. 1 ¶¶ 89, 95–96.) And Plaintiffs allege that their detention, Doe 14's job termination, and the lack of clarity as to whether Doe 14 can complete his doctoral program has caused them financial and emotional distress. (Doc. 2-2 ¶¶ 44–57.)

Given the limited scope of this TRO, the serious consequences that could befall Plaintiffs, and because "the public interest is served by compliance with the APA," *see E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 678 (9th Cir. 2021) (citation modified), the Court concludes the merged final two *Winter* factors weigh in favor of granting the TRO, *see Winter*, 555 U.S at 22.

Rule 65(c) provides that a court may issue a preliminary injunction or TRO "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). A district court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quotation omitted).

Here, the Government faces no realistic likelihood of harm from Plaintiffs' requested temporary injunctive relief, and the Court will not require Plaintiffs to file a bond. *See Arizona Student Doe #1 v. Trump*, 2025 WL 1192826, at *8 (D. Ariz. 2025).

///

### III. MOTION FOR PSEUDONYMITY/PROTECTIVE ORDER

Turning to Plaintiffs' Motion to Proceed with Pseudonym and for Protective Order/Order not to Detain, generally, a party proceeding anonymously "runs afoul of the public's common law right of access to judicial proceedings, . . . and Rule 10(a)'s command that the title of every complaint 'include the names of all the parties.'" *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000) (quoting Fed. R. Civ. P. 10(a)). However, when special circumstances justify secrecy, federal courts may allow parties to proceed under a pseudonym. *Id.* (collecting cases). In the Ninth Circuit, the standard is whether "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068.

At this time, the Court will not finally rule on Plaintiffs' request to proceed under a pseudonym because the current record is insufficient to determine whether anonymity is warranted under Rule 10(a). Thus, the Court will wait for the motion to be fully briefed. In the meantime, however, the Court will issue a protective order as to Plaintiffs' identities to maintain the status quo but requires certain protected disclosures to Defendants to enable them to respond to Plaintiffs' requests for relief. As ordered below, these protected disclosures may **only** be used by Defendants for purposes of this litigation. Plaintiffs' requested relief of non-detention is currently addressed by issuance of this Order enjoining Defendants from arresting, incarcerating, or transferring Plaintiffs pending resolution of these proceedings and expedited briefing and a hearing. Any further, longer-lasting relief may be ordered by the Court, if warranted, after it receives briefing on both motions.

Accordingly,

**IT IS ORDERED** granting Plaintiffs' motion for a TRO to preserve the status quo pending further briefing, and setting an expedited hearing on Plaintiffs' Motion for Preliminary Injunction (Doc. 2) for **Wednesday, June 11, 2025, at 10:00 a.m**. Defendants shall file responses to Plaintiffs' Motions (Docs. 2, 3) no later than **Friday, June 6, 2025**, and Plaintiffs shall file replies no later than **Tuesday, June 10, 2025**.

///

**IT IS FURTHER ORDERED** as follows:

1. Defendants are enjoined for 14 days from arresting and incarcerating Plaintiffs pending resolution of these proceedings. 5 U.S.C. § 705;

2. Defendants are enjoined for 14 days from transferring Plaintiffs outside the jurisdiction of this District pending the resolution of these proceedings. 5 U.S.C. § 705;

3. Defendants shall restore Plaintiffs' SEVIS records retroactively to the date of the initial terminations such that there are no gaps or lapses in Plaintiffs' SEVIS records;

4. The parties are ordered to redact or file under seal any information identifying Plaintiffs;

5. Defendants' counsel are prohibited from sharing any information about Plaintiffs' identity or related personal information beyond what is reasonably necessary for the litigation (including to comply with Court orders) and are prohibited from use of the information for any purpose outside of the litigation; and

6. Plaintiffs shall serve Defendants with this Order forthwith and provide proof of service on the docket by no later than **Monday, June 2, 2025**.

Dated this 30th day of May, 2025.

_____
Honorable Sharad H. Desai
United States District Judge